UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-21813-Civ-COOKE

SAGA OVERSEAS, LLC,

    Plaintiff,

vs.

JEH JOHNSON, Secretary, Department of
Homeland Security; LEON RODRIGUEZ,
Director, Citizenship and Immigration
Services; GREGORY RICHARDSON,
Director, Texas Service Center,

    Defendants.
_____/

## OMNIBUS ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

This action arises out of the United States Citizenship and Immigration Services' ("USCIS") denial of a Form I-140, Immigrant Petition for Alien Worker Visa ("Form I-140 Petition"), and the Administrative Appeals Office's ("AAO") subsequent denial of an appeal. It is currently before me on the parties' cross-motions for summary judgment.

### I. BACKGROUND

Plaintiff, Saga Overseas, LLC ("Saga"), is the U.S. subsidiary of a Venezuelan company, Ferrelago, C.A. ("Ferrelago"), which has two primary office locations in Venezuela. Pl.'s Mot. Summ. J. ¶ 2, ECF No. 19. Ferrelago operates as an importer and exporter of agricultural and construction machinery and provides related consulting services. Def.'s Mot. Summ. J. 1, ECF No. 18. On July 22, 2013, Saga filed a Form I-140 Petition with USCIS for Diana Maria Auvert Vetencourt ("Vetencourt"), a foreign national, to work in the United States as Saga's general manager. Pl.'s Mot. Summ. J. ¶ 10; Def.'s Mot. Summ. J. 1. Saga sought to qualify Vetencourt as a "multinational business executive or manager" pursuant to 8 U.S.C. § 1153(b)(1)(C), or Section 203(b)(1)(C) of the Immigration and Nationality Act ("the Act")). *Id.* at 2.

Vetencourt has a Master's Degree in Business Administration from the Institute of Higher Education Administration in Venezuela and has over twenty years of advanced work

1

experience in the field of Business Administration. Pl.'s Mot. Summ. J. ¶ 5. Ferrelago hired Vetencourt as a Marketing Analyst in 1990, promoted her to Marketing Manager in 1999, and again promoted her to the position of General Manager of Ferrelago in 2007. *Id.* ¶ 6.

On October 25, 2010, Saga submitted a Form I-129, Petition for a Nonimmigrant Worker Visa, seeking to classify Vetencourt as a multinational executive/manager in accordance with 8 U.S.C. § 1101(a)(15)(L) (the "L-1A visa"). *Id.* ¶ 8. USCIS approved Vetencourt's L-1A visa, and in November 2010, Saga transferred Vetencourt to the United States to work as its General Manager. *Id.* ¶ 7. USCIS approved Vetencourt's original L-1A visa for the period of November 15, 2010 through November 14, 2011. *Id.* Saga then submitted another L-1A visa petition seeking to extend Vetencourt's classification, which USCIS granted for the period of November 15, 2011 through November 14, 2013. *Id.* ¶ 9.

Subsequently, Saga filed the instant Form I-140 Petition, and included a general job description of Vetencourt's position along with its application materials. Def.'s Mot. Summ. J. 2. The job description stated that Vetencourt would direct Saga by overseeing its growth and structural development, setting strategies, and planning the company's activities and human resources. *Id.* Further, Saga stated that Vetencourt would represent the company in all contract negotiations at the national and international levels, control financial investments and technical operations, and have discretionary authority over all personnel actions, including hiring and firing of employees, evaluating employee performances, and establishing procedures for all training purposes. *Id.*

Due to an insufficiency of evidence establishing that Vetencourt would be employed in the United States in a managerial or executive capacity, USCIS issued a Request for Evidence ("RFE") on September 30, 2013. *Id.* USCIS determined that Saga's description of Vetencourt's job was too vague, making it difficult to determine precisely what job duties she would perform on a daily basis. *Id.* Further, USCIS deemed Saga's claimed staff of six employees to be limited. *Id.* Saga responded to USCIS' RFE with evidence that included a percentage breakdown of Vetencourt's job duties, consisting of a list of 29 items of her daily, weekly, monthly, quarterly, and yearly job duties. *Id.* at 3. Saga also provided an organizational chart depicting a three-tiered organizational system with Vetencourt at the top, followed by an administrative assistant, an attorney, an accounting firm, a business

2

development specialist, and one vacant position titled "business consultant" below her. *Id.* The bottom tier of the organizational chart also included a sales associate, identified as employed in Venezuela, a freight forwarder, and one vacant position titled "logistics import & export specialist." *Id.*

After reviewing Saga's submissions, USCIS determined that Saga failed to establish that Vetencourt would be employed in the United States in a qualifying managerial or executive capacity. *Id.* Therefore, USCIS denied Saga's Form I-140 Petition on behalf of Vetencourt on February 21, 2014. *Id.* at 3. More specifically, USCIS found that Saga's descriptions of Vetencourt's job duties "fail to convey an understanding of exactly what the beneficiary will be doing on a day-to-day basis." R. at P573. The decision further stated that many of Vetencourt's job duties "are not higher level duties that necessitate a multinational executive or manager." *Id.* USCIS also noted that the two employees who work directly for Saga, under Vetencourt's purported supervision, are both employed on a part-time basis. This led USCIS to question whether those employees could relieve Vetencourt from having to perform nonqualifying tasks as the primary portion of her daily responsibilities. Def.'s Mot. Summ. J. 3.

Saga filed a timely appeal (Form I-1290B, Notice of Appeal) seeking to overturn USCIS's decision, and provided the expert opinion testimony of Professor Elliot Burak in support of its arguments that Vetencourt's position is "managerial or executive." *Id.* at 4. However, on January 5, 2015, the AAO denied Saga's appeal, finding that Saga had "failed to establish that Vetencourt would be employed in a primarily managerial or an executive capacity." R. at P551.

## II. LEGAL STANDARD

Under Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Haves v. City of Miami,* 52 F.3d 918, 921 (11th Cir. 1995) (citing *Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro,* 38 F.3d 1571, 1578 (11th Cir. 1994)). "The principles governing summary judgment do not change when the parties file cross-motions for summary judgment." *T–Mobile S. LLC v. City of Jacksonville, Fla.,* 564

F. Supp. 2d 1337, 1340 (M.D. Fla. 2008). As this action is before the Court on such cross-motions, "the court must determine whether either of the parties deserves judgment as a matter of law on the undisputed facts." *Id.*

When USCIS grants or denies a visa preference classification, this decision is subject to judicial review under the Administrative Procedures Act ("APA"), *see* 5 U.S.C. § 702, "but the standard [of review] is a highly deferential one which presumes that the agency's action is valid." *Khamisani v. Holder*, No. H-10-0728, 2011 WL 1232906, at *3 (S.D. Tex. 2011). Indeed, "'even in the context of summary judgment, an agency action is entitled to great deference.'" *Sunshine Co. Food Distrib., Inc. v. U.S. Citizenship & Immigration Servs.,* 362 F. App'x 1, 2 (11th Cir. 2010) (quoting *Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs,* 87 F.3d 1242, 1246 (11th Cir. 1996)).

"Under the APA, a court shall set aside an action of an administrative agency only where it is arbitrary, capricious, or an abuse of discretion." *Preserve Endangered Areas,* 87 F.3d at 1246 (citing 5 U.S.C. § 706(2)(A)). In making this determination, a court "must consider whether an agency's decision 'was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" *Sunshine Co. Food Distrib., Inc.,* 362 F. App'x at 2–3 (quoting *Sierra Club v. Johnson,* 436 F.3d 1269, 1274–74 (11th Cir. 2006)). Further, the scope of review of the agency's action is generally limited to the administrative record. *See Preserve Endangered Areas,* 87 F.3d at 1246 ("[W]hile certain circumstances may justify going beyond the administrative record, a court conducting a judicial review is not 'generally empowered' to do so.").

Thus, "[t]he role of the court is not to conduct its own investigation and substitute its own judgment for the administrative agency's decision." *Preserve Endangered Areas,* 87 F.3d at 1246; *see also Smith v. Holder,* 487 F. App'x 731, 733 (3d Cir. 2012) ("[T]he court should not re-weigh the evidence presented but must determine only if 'a reasonable mind might accept [the evidence] as adequate to support a conclusion.'"). Instead, the court is limited to deciding whether "'on the basis of the record the agency provides, . . . the action passes muster under the appropriate APA standard of review.'" *Preserve Endangered Areas,* 87 F.3d at 1246 (quoting *Fla. Power & Light Co. v. Lorion,* 470 U.S. 729, 743–44, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985)). "Thus, this narrow scope of review forbids a reviewing court from substituting its judgment for that of the agency, and mandates affirmance if a rational basis

4

exists for the agency decision, even if the court might otherwise disagree." *Khamisani,* 2011 WL 1232906, at *3.

### III. DISCUSSION

Each year, USCIS grants a limited number of preference visas to "certain multinational executives and managers" who serve "in a capacity that is managerial or executive." 8 U.S.C. § 1153(b)(1)(C); *see Khamisani,* 2011 WL 1232906 at *3. A United States employer seeking to permanently employ an alien in this visa category must file a Form I-140 Petition under 8 U.S.C. § 1153(b)(1)(C). *See* 8 C.F.R. § 204.5(j)(1). Under the statute, "[p]reference is given to an alien who, in the three years preceding the alien's application for classification and admission into the United States, has been employed for at least one year by a corporation and seeks to enter the United States in order to continue to render services to the same employer or to a subsidiary in a 'capacity that is managerial or executive.'" *Tsiva, Inc. v. Attorney Gen., Dep't of Justice,* No. 3:12-CV-631-J-34PDB, 2014 WL 6675607, at *5 (M.D. Fla. 2014) (quoting *Sunshine Co. Food Distrib., Inc.,* 362 F. App'x at 3); *see also Khamisani,* 2011 WL 1232906, at *3.

The Act defines "managerial capacity" as follows:

> [A]n assignment within an organization in which the employee primarily-
> (i) manages the organization, or a department, subdivision, function, or component of the organization;
> (ii) supervises and controls the work of other supervisory, professional, or managerial employees, or manages an essential function within the organization, or a department or subdivision of the organization;
> (iii) if another employee or other employees are directly supervised, has the authority to hire and fire or recommend those as well as other personnel actions (such as promotion and leave authorization) or, if no other employee is directly supervised, functions at a senior level within the organizational hierarchy or with respect to the function managed; and
> (iv) exercises discretion over the day-to-day operations of the activity or function for which the employee has authority. A first-line supervisor is not considered to be acting in a managerial capacity merely by virtue of the supervisor's supervisory duties unless the employees supervised are professional.

8 U.S.C. § 1101(a)(44)(A).

The Act defines "executive capacity" as follows:

5

> [A]n assignment within an organization in which the employee primarily-
> (i) directs the management of the organization or a major component or function of the organization;
> (ii) establishes the goals and policies of the organization, component, or function;
> (iii) exercises wide latitude in discretionary decision-making; and
> (iv) receives only general supervision or direction from higher level executives, the board of directors, or stockholders of the organization.

8 U.S.C. § 1101(a)(44)(B).

Additionally, 8 U.S.C. § 1101(a)(44)(C) states the following regarding staffing levels and size of organizations:

> If staffing levels are used as a factor in determining whether an individual is acting in a managerial or executive capacity, the Attorney General shall take into account the reasonable needs of the organization, component, or function in light of the overall purpose and stage of development of the organization, component, or function. An individual shall not be considered to be acting in a managerial or executive capacity (as previously defined) merely on the basis of the number of employees that the individual supervises or has supervised or directs or has directed.

8 U.S.C. § 1101(a)(44)(C).

Here, Saga contends that USCIS ignored the evidence it provided regarding Vetencourt's classification as an executive or manager in support of its Form I-140 Petition. As a result, Saga contends that USCIS's decision is so contrary to the administrative record as to necessitate reversal. Saga further claims that USCIS applied an incorrect legal standard in its review of the Form I-140 Petition filed on behalf of Vetencourt, and thus, behaved in an arbitrary and/or capricious manner. *Id.* However, USCIS disagrees, noting that the record in this case does not substantiate Saga's assertion that Vetencourt's position is primarily managerial or executive in nature. USCIS explains that it considered Vetencourt's job description in the context of Saga's organizational structure as a whole, the duties of Vetencourt's subordinate employees, the ability of these subordinate employees to relieve Vetencourt from performing operational duties, the nature of Saga's business, and other factors that contribute to a comprehensive understanding of Vetencourt's actual duties and role within Saga. USCIS maintains that in looking at these different factors, Saga has failed to establish that Vetencourt is primarily employed in a managerial or executive

capacity.

After considering the parties' arguments and the administrative record, I agree with USCIS's decision. A review of the administrative record reveals that USCIS considered relevant factors, and that there is at least some "rational connection" between the record and the denial of Saga's petition. *Q Data Consulting, Inc. v. I.N.S.*, 293 F. Supp. 2d. 25, 28 (D.D.C. 2003); *see also Dickinson v. Sec'y of Def.*, 68 F.3d 1396, 1404-1405 (D.C. Cir. 1995) (finding that an agency's decision need not be "be a model of analytical precision to survive a challenge," but it "must minimally contain a 'rational connection between the facts found and the choice made.'"). Based upon the record, USCIS made a rational determination that Vetencourt's employment responsibilities are not primarily managerial. R. at P576. While USCIS provides for a limited number of employment-based classifications for multinational managers because they are considered "priority workers," these classifications are only allocated to employees with positions that are "primarily managerial" or "primarily executive." 8 U.S.C. § 1101(a)(44)(A); 8 U.S.C. § 1101(a)(44)(B); 8 C.F.R § 204.5(j)(2). In determining that Vetencourt would be employed in the United States in a job that is not primarily managerial, USCIS grounded its decision in a review of the documentation Saga provided regarding Vetencourt's position as a general manager.

First, USCIS reasonably concluded that the record evidence fails to adequately demonstrate just how Vetencourt's responsibilities are *primarily* managerial or executive in nature. In response to USCIS's RFE, Saga submitted documentation purportedly expanding upon the descriptions of Vetencourt's job duties. However, USCIS found the submitted job descriptions to be lacking in specificity. For example, Saga listed the following specific tasks to be carried out by Vetecnourt: "supervising employees at the end of the day" and "planning special activities." Although Saga provided some additional details regarding these duties, USCIS found the information provided to be inadequate in explaining the actual work Vetencourt performs to achieve the broad objectives outlined by Saga in its general job descriptions.

The general descriptions provided by Saga fall short of the detailed descriptions necessary to determine whether an employee's actual duties will be primarily managerial. *See* 8 C.F.R. § 204.5(j)(5). General descriptions are inadequate to satisfy the implementing regulations because, as one court has observed, "[t]he actual duties themselves reveal the

7

true nature of the employment." *Fedin Bros. Co. v. Sava*, 724 F. Supp. 1103, 1108 (E.D.N.Y. 1989). Because the evidence submitted by Saga fails to establish that Vetencourt's actual duties will be primarily managerial or executive in nature, as those terms are defined by 8 U.S.C. § 1101(a)(44)(A), 8 U.S.C. § 1101(a)(44)(B), and the implementing regulations, Saga has failed to meet its burden in demonstrating that Vetencourt is eligible for the requested relief. As the facts in the record do not compel a conclusion that Vetencourt would have been primarily engaged in managerial duties, as opposed to in administrative and operational tasks, USCIS's determination that Vetencourt's job duties are not adequately defined is not arbitrary, capricious, or an abuse of its discretion.

Further, USCIS reasonably decided that some of Vetencourt's tasks are of a nonqualifying nature. The following duties and responsibilities provided in support of Vetencourt's petition are more non-managerial or administrative in nature: checking mail, paying bills, contacting clients, checking bookkeeping software, and getting new clients for consulting projects. USCIS was within its bounds in determining that these duties, and perhaps others, are non-managerial. "By requiring that the duties be primarily managerial or executive, the express language of the regulations excludes workers whose job involves a mix of management and non-management responsibilities." *Khamisani*, 2011 WL 123906, at *7. In the instant case, it is apparent that Vetencourt's duties involve a mix of managerial and administrative tasks, and as such, it is not an abuse of discretion for USCIS to deny Saga's Form I-140 Petition on behalf of Vetencourt.

Additionally, USCIS correctly found that the record fails to establish that Saga has the staffing necessary to relieve Vetencourt from having to spend a majority of her time performing non-managerial tasks. USCIS considered the job descriptions and organizational charts provided by Saga and determined that a majority of Vetencourt's time could not possibly be spent acting in an executive or managerial capacity. As the AAO explained, "[g]iven that the petitioner had two vacancies within its organization, it is unclear who, if not the beneficiary, was available to carryout out the job duties that would normally be assigned to a business consultant specialist and logistics import and export specialist had those positions been filled at the time of filing." R. at P553. Further, "[g]iven the fact that both the beneficiary's subordinates were employed on a part-time basis, we cannot assume that either individual was available to carry out the job duties of a position other than their

own." *Id*.

In *Sunshine Co. Food Distrib.*, the Eleventh Circuit held that the district court did not err in granting summary judgment in favor of USCIS after "USCIS found that the majority of [the beneficiary's time] could not be spent acting in an executive or managerial capacity because [the beneficiary] had to fulfill non-managerial and non-executive tasks." *Sunshine Co. Food Distrib., Inc.*, 362 F. App'x at 3-4; s*ee also Q Data Consulting, Inc.*, 293 F. Supp. 2d at 25 (D.D.C. 2003) (holding that the beneficiary's former and proposed duties were not primarily managerial for purposes of a Form I-140 Petition based, in part, on an "absence of evidence that a sufficient 'subordinate staff' will 'relieve her from performing managerial nonqualifying duties.'"). Similarly, here, in spite of Saga's contention that Vetencourt spends 90% of her time acting in an executive or managerial capacity, USCIS considered the job descriptions and organizational charts provided by Saga and determined that a majority of Vetencourt's time could not possibly be spent acting in an executive or managerial capacity since the two employees working under her supervision are only part-time employees. As the AAO observed, "we cannot assume that the only non-qualifying [tasks] the beneficiary would perform are those that were expressly identified in the percentage breakdown provided in the RFE response." R. at P553. As such, USCIS reasonably concluded that many non-managerial tasks would fall on Vetencourt due to the lack of supporting positions within the company. This determination is supported by the record, and thus, USCIS's denial of Saga's Form I-140 Petition is not arbitrary, capricious, or an abuse of discretion.

Saga further contends that USCIS erred in failing to properly consider the expert testimony of Professor Burak, which Saga submitted to further bolster its Form I-140 Petition for Vetencourt. However, since Professor Burak indicated that he was unfamiliar with the Act's definitions of managerial and executive capacity, it was not arbitrary or capricious for USCIS to decline to afford his opinions much evidentiary weight. Specifically, "[t]here is no indication that Mr. Burak was aware of and thoroughly understood the applicable statutory definitions." *Id.* As such, the amount of weight USCIS accorded Mr. Burk's opinions was reasonable and not an abuse of discretion.

Finally, Saga argues that this Court should rule in its favor because USCIS previously granted Vetencourt's L-1A visas, which have the same managerial criteria as the

I-140 classification. Such inconsistency, Saga argues, mandates reversal of the denial as well as an explanation of the inconsistency. However, Saga's arguments are inapposite. "[M]any cases where I-140 petitions were denied involved aliens who already enjoyed classification L nonimmigrant status." *Q Data Consulting, Inc., v.* 293 F. Supp. 2d at 30; *see also Ikea U.S., Inc. v. Dept. of Justice, INS*, 48 F. Supp. 2d 22, 23 (D.D.C. 1999). In some cases "L-1A classifications are simply approved in error, especially nonimmigrant visa petitions that the INS spends less time deciding than I-140 petitions." *Q Data Consulting, Inc.*, 293 F. Supp. 2d at 30. Therefore, USCIS "is not required to approve an application on the basis of a prior erroneous approval where eligibility is not demonstrated." *Hakimuddin v. Dep't of Homeland Sec.*, No. CIV 4:08-CV-1261, 2009 WL 497141, at *6 (S.D. Tex. 2009). As such, USCIS's prior decisions granting Vetencourt's L-1A visa applications, whether in error or not, is insufficient to support a finding that USCIS's current denial of Saga's Form I-140 Petition on behalf of Vetencourt was arbitrary, capricious, or an abuse of discretion.

## IV. CONCLUSION

Having reviewed the arguments and the record, I do not find that USCIS was arbitrary or capricious, or that it abused its discretion in denying Saga's Form I-140 Petition on behalf of its employee, Diana Maria Auvert Vetencourt. Although I am sympathetic to Vetencourt's situation, I am bound by the applicable laws and standard of review. Therefore, it is hereby **ORDERED and ADJUDGED** as follows:

(1) Defendants' Motion for Summary Judgment (ECF No. 18) is **GRANTED.**

(2) Plaintiff's Motion for Summary Judgment (ECF No. 19) is **DENIED**.

(3) All pending motions, if any, are **DENIED** *as moot*.

(4) The Clerk shall **CLOSE** this case.

(5) A separate judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure shall issue concurrently.

**DONE and ORDERED** in Chambers at Miami, Florida, this 10th day of August 2016.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Counsel of Record*

11